UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ESTHER BIOH, | Case No. |
| Plaintiff, | COMPLAINT |
| -against- | PLAINTIFF DEMANDS A TRIAL BY JURY |
| THE BANK OF NEW YORK MELLON CORP, | |
| Defendant | |

_____

Plaintiff ESTHER BIOH ("Plaintiff"), by and through her attorneys, LAW OFFICES OF ROBERT M. FOX, hereby complains of the Defendant THE BANK OF NEW YORK MELLON CORP., upon information and belief, as follows:

## NATURE OF THE ACTION

Plaintiff complains pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the New York State Human Rights Law, New York State Executive Law Section 290 et seq., New York State Executive Law § 296, et seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code Section 8-101 et seq., New York City Administrative Code § 8-107(1), et seq. ("NYCHRL*")*. Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated, retaliated against and wrongfully terminated by Defendant solely due to her disabilities and /or perceived disabilities. Plaintiff seeks compensatory and punitive damages, attorneys' fees and other appropriate relief.

## PARTIES

1. At all times relevant hereto, Plaintiff ESTHER BIOH (hereinafter "Bioh") is a Black woman and resident of the State of New York, Bronx County was a "person" and an "employee" entitled to protection as defined by the ADA, the NYSHRL, and NYCHRL.

2. Upon information and belief, Defendant THE BANK OF NEW YORK MELLON CORP (hereinafter "Defendant") is a company operating in the State of New York with a location at 240 Greenwich Street, New York, New York 10007.

3. Upon information and belief, Defendant employs fifteen or more employees.

4. At all times relevant, Ms. Bioh was an employee of Defendant.

5. At all times relevant, Ms. Bioh was disabled within the meaning of the ADA.

## NATURE OF THIS CASE

6. Plaintiff complains pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the New York State Human Rights Law, New York State Executive Law Section 290 et seq., New York State Executive Law § 296, et seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code Section 8-101 et seq., New York City Administrative Code § 8-107(1), et seq. ("NYCHRL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated, retaliated against and wrongfully terminated by Defendant solely due to her disabilities and /or perceived disabilities. Plaintiff seeks compensatory and punitive damages, attorneys' fees and other appropriate relief.

## JURISDICTION AND VENUE

7. Jurisdiction in this Court is proper under 42 U.S.C. § 12101, et seq., and 28 U.S.C. §§ 1331 and 1343.

8. The Court has supplemental jurisdiction over the claims Plaintiff brings under state and city laws pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

10. Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff received a Notice of Right to Sue from the EEOC, dated December 18, 2025. concerning the herein charges of discrimination. A copy of the Notice is annexed hereto.

12. This action is being commenced within 90 days of receipt of said Notice of Right to Sue

## MATERIAL FACTS

13. In or around August 2023, Esther Bioh, a new college graduate, began working for Defendant as an analyst in Defendant's two-year Markets and Wealth Services Analyst Program out of Defendant's New York City headquarters.

14. As a new college graduate, Ms. Bioh was excited at the opportunity to work for Defendant, as its Analyst Program is highly competitive, highly regarded, and provided potential for full time employment after the program concluded.

15. Predating her employment with Defendant, Plaintiff suffered menorrhagia and other

symptoms of endometriosis including prolonged bleeding, pain, and discomfort. Complainant engaged with her physicians to explore various treatment options for her symptoms.

16. As with many chronic conditions, Ms. Bioh tried different treatment options to determine which best managed her symptoms without significant side effects.

17. Ms. Bioh periodically suffered and continues to suffer from symptoms related to her disability and treatments for her disability including nausea, fatigue, and headaches that interfere with her ability to travel to work.

18. Plaintiff understood that Defendant required employees to report to the office three days per week and allowed employees to work remotely two days per week. Plaintiff understood there to be some flexibility in Defendant's policy, in that the days of the week could be changeable and there could be weeks wherein a person did not meet the attendance requirement but "made up" the in-office days another week.

19. Ms. Bioh utilized this flexibility as needed when her disability symptoms flared - in the form of working remotely when she was not feeling well.

20. When Ms. Bioh took remote days due to her disability symptoms or to attend medical appointments, she communicated the same to her supervisors via Teams messages or through notes submitted contemporaneously with her time off requests. She did not receive any complaints about her work.

21. Thus, Defendant was on notice via its managers, including John Templeton ("Templeton") and Victor O'Laughlen ("O'Laughlen"), that Plaintiff had a medical condition that required regular appointments and was the cause of her need to work remotely on occasion.

22. Further, in or around Summer 2024, Ms. Bioh had a conversation with Templeton about

her in-office days wherein Ms. Bioh reported that her absences on those days were due to medical appointments.

23. Plaintiff was not contacted by anyone in Defendant's Human Resources to discuss options available to her in the form of reasonable accommodation or other leave options for Plaintiff to take time off because of her disability.

24. In late 2024, during a one-on-one meeting with her then-supervisor O'Laughlen, O'Laughlen suggested that Plaintiff hold on to doctors' notes in case they were needed. Ms. Bioh did as O'Laughlen indicated but was never asked to provide documentation for her absences or remote days.

25. In a separate performance review with O'Laughlen, Plaintiff received no negative feedback about her work performance but did receive an admonishment about how often she reported to Defendant's office in person. For the first time, O'Laughlen suggested that Plaintiff consider applying for a reasonable accommodation, a process that had not been previously suggested to her.

26. Thereafter, in or around late January 2025, Ms. Bioh applied for a reasonable accommodation through Defendant's online human resources portal. Plaintiff requested to be granted an additional remote workday per week because of her disability.

27. During the online application process, Plaintiff was asked a follow-up question by one of Defendant's Human Resources employees named Emily regarding for how long she needed her accommodation. Ms. Bioh responded that she would need the accommodation until approximately February 26, 2025, when she had a follow up appointment with her doctor and could reassess her need for the accommodation.

28. While the accommodation request was pending, Ms. Bioh reported to the office for the required three days per week and worked remotely, as permitted, the other two days per

5

week.

29. On or about Wednesday, February 19 or Thursday, February 20, 2025, Plaintiff received notice that her reasonable accommodation was granted via an email sent to her and O'Laughlen.

30. Approximately 1-2 days later, on Friday, February 21, 2025, Ms. Bioh logged on to a virtual meeting that O'Laughlen invited her to, titled "follow up from our 1:1."

31. When Ms. Bioh logged on to the meeting, O'Laughlen and a representative from Defendant's Human Resources terminated her employment.

32. Defendant's Human Resources representative acknowledged that Ms. Bioh had just been granted a reasonable accommodation.

33. Ms. Bioh was shocked that she was being terminated just one day after her accommodation was granted and before she was able to utilize it.

34. In her termination meeting, Defendant cited Plaintiff's absences and failure to comply with its return to office mandates as the reason for her termination.

35. But for Plaintiff's disability and her request for a reasonable accommodation, Plaintiff would not have been terminated.

36. Defendant never took steps to contact Ms. Bioh and engage in the interactive process with her to determine what accommodations they could provide her.

37. Ms. Bioh felt offended, disturbed, and humiliated by the unlawful and discriminatory termination.

38. Ms. Bioh was able and qualified to perform her job responsibilities with or without a reasonable accommodation.

39. Ms. Bioh has been unlawfully discriminated against on the basis of her actual and/or perceived disabilities and in retaliation for requesting reasonable accommodation. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

40. Defendant knowingly and willingly refused to provide Plaintiff with a reasonable accommodation for her disability, in violation of the ADA, New York State Human Rights Law and New York City Human Rights Law.

41. But for Plaintiff's disabilities and her requesting an accommodation, she would not have been subjected to an adverse employment action at the hands of Defendant.

42. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional and physical distress.

43. As a result of the acts and conduct complained of herein, Plaintiff has also suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails.

44. At all relevant times, Ms. Bioh was an individual with one or more disabilities within the meaning of the ADA.

45. Defendant perceived Ms. Bioh to be disabled.

46. At all relevant times, Ms. Bioh was and is a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

47. At all times relevant, Ms. Bioh's disability was an impairment which substantially limits major life activities within the meaning of § 12102(1)(A) of the ADA.

48. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION <u>UNDER THE AMERICAN WITH DISABILITIES ACT</u>

49. Plaintiff repeats and alleges each and every allegation made in the above paragraphs 1-48 of this Complaint.

50. Plaintiff asserts that Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended.

51. The ADA prohibits discrimination against any qualified individual on the basis of disability, the perception that she or he is disabled, or a record of impairment.

52. Additionally, the ADA requires a covered entity to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

53. As described above, Defendant and its staff discriminated against Plaintiff in violation of the ADA by failing to accommodate her disabilities.

54. Despite being aware that Plaintiff was disabled and had received a reasonable accommodation, Defendant terminated the Plaintiff.

55. Plaintiff had, and /or Defendant perceived that she had a physical impairment that substantially limits one or more of her major life activities.

56. As a result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, worsened anxiety, humiliation,

embarrassment, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

57. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under the law.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

58. Plaintiff repeats and alleges each and every allegation made in the above paragraphs 1-57 of this Complaint.

59. The ADA prohibits retaliation, interference, coercion, or intimidation.

60. 42 U.S.C. § 12203 provides:

   a. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   b. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

61. Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff because of her disability and for engaging in protected activity by requesting a reasonable accommodation.

62. Defendant knew or should have known of their obligations to accommodate Plaintiff under the ADA.

63. But for Plaintiff's disabilities and request for reasonable accommodations,

9

Defendant would not have terminated her employment.

64. Defendant had no good-faith business justification to terminate Plaintiff.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses, Plaintiff has further experienced severe emotional and physical distress.

66. As such, Plaintiff is entitled to the maximum amount allowed under this law.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1-66 of this Complaint.

68. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Plaintiff was terminated immediately after she had requested and received a reasonable accommodation.

70. Defendant had no good faith reason to terminate the Plaintiff.

71. Plaintiff was subjected to discrimination that was solely on the basis of her disabilities.

72. As a result of the acts and conduct complained herein, Plaintiff has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of increase in income, benefits and other compensation which such employment entails, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK STATE LAW

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs 1-72 of this Complaint as it more fully set forth herein at length.

74. Executive Law § 296 provides that "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

75. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendant.

76. Defendant terminated against Plaintiff after she had received a reasonable accommodation.

77. Such termination was retaliatory because Plaintiff had requested an accommodation.

78. As a result of the acts and conduct complained herein, Plaintiff has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of increase in income, benefits and other compensation which such employment entails, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain

and suffering, and other non-pecuniary losses.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs 1-78 of this Complaint as if more fully set forth herein at length.

80. The Administrative Code of City of NY § 8-107 [1] provide that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or an employee agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employments such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

81. Defendant discriminated against Plaintiff based upon her disability and because she needed an accommodation to work with such disability.

82. Defendant terminated Plaintiff because she requested an accommodation.

83. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminatory against Plaintiff because of her disabilities.

84. As a result of the acts and conduct complained herein, Plaintiff has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of increase in income, benefits and other compensation which such employment entails, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

## AS A SIXTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs 1-84 of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer … to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

87. During her employment for Defendant, Plaintiff had a disability under the NYCHRL.

88. Defendant retaliated against Plaintiff based upon her disability.

89. Defendant's conduct was willful and in violation of the New York City Human Rights Law § 8-107.

90. Defendant terminated Plaintiff in retaliation for her requesting reasonable accommodations based upon her disability and protesting when Defendant failed to accommodate.

91. Defendant violated the section cited herein as set forth.

92. As a result of the acts and conduct complained herein, Plaintiff has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of increase in income, benefits and other compensation which such employment entails, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

## PUNITIVE DAMAGES

93. Plaintiff is entitled to the maximum amount allowed under this statute/law.

94. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

95. As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against the Defendant.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law, in that Defendants discriminated against Plaintiff on the basis of her disability, perceived disability and need for reasonable accommodation;

B. Declaring that Defendants engaged in unlawful retaliation prohibited by the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law, in that Defendants retaliated against Plaintiff on the basis of her disability, perceived disability and request and need for reasonable accommodation;

C. Awarding damages to Plaintiff resulting from Defendant's unlawful practices, and to otherwise make her whole of any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law and City-law claims;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

14

F.  Awarding Plaintiff punitive damages;

G.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:  February 26, 2026
New York, New York

                Respectfully submitted,
                **THE LAW OFFICES OF ROBERT M. FOX**
                Attorney for the Plaintiff
                /s/ Susan Adler

BY: _____
                Susan Adler, Esq.
                The Law Offices of Robert M. Fox
                630 Third Avenue, 18th Floor
                New York, NY 10017
                212-867-9595
                susan@rfoxlaw.com